CHRISTOPHER JOSEPH DESALVA (SBN 172209)
LAW OFFICE OF CHRISTOPHER JOSEPH DESALVA
45-902 Oasis Street, Suite D, Indio, CA 92201
Telephone: (760) 447-0031 | Email: desalvalaw@gmail.com

Attorney for Petitioner
LESBIA MERCEDES GONZALEZ VELASQUEZ

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| LESBIA MERCEDES GONZALEZ VELASQUEZ,<br><br>Petitioner,<br><br>v.<br><br>FERETI SEMAIA, Warden, Adelanto ICE Processing Center; JAIME RIOS, Field Office Director, U.S. Immigration and Customs Enforcement, Los Angeles Field Office; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; and TODD BLANCHE, Attorney General of the United States,<br><br>Respondents. | Case No. ____________________<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; REQUEST FOR ORDER TO SHOW CAUSE WITHIN THREE (3) DAYS; DECLARATORY RELIEF**<br><br>**IMMEDIATE RELEASE REQUESTED** |

## I. INTRODUCTION

1. Petitioner Lesbia Mercedes Gonzalez Velasquez (A246-403-552) is a 51-year-old citizen of Nicaragua whom the Department of Homeland Security itself inspected and released into the United States on parole under section 212(d)(5) of the Immigration and Nationality Act on November 30, 2022. She used that liberty exactly as the law contemplates: she settled in Los Angeles County, filed an affirmative application for asylum with United States Citizenship and Immigration Services, obtained a federal Employment Authorization Document valid through June 25, 2030, obtained a Social Security card, kept her address current with the agency, and appeared when the Government told her to appear. She has no criminal history of any kind.

2. On July 20, 2026 — after three years and eight months of that Government-sanctioned liberty — Petitioner was taken into physical custody at a check-in appointment she was directed to attend. She was given no notice that her liberty was about to be revoked, no written determination explaining why, no individualized finding that she had become a flight risk or a danger, and no opportunity of any kind to be heard before she was jailed. She has been held at the Adelanto ICE Processing Center ever since.

3. What the Government did next confirms that no lawful custody determination was ever made. DHS placed Petitioner into expedited removal under section 235(b)(1) of the Act — a track Congress limited to noncitizens who cannot show two years of continuous physical presence, and one Petitioner plainly did not belong in after nearly four years of documented residence and a pending USCIS asylum application. An asylum officer then found that she has a credible fear of persecution or torture, and DHS vacated its own expedited removal order. It issued a Notice to Appear placing her in ordinary removal proceedings under section 240 — while alleging, in the teeth of its own parole record, that she is a noncitizen who was "not then admitted or paroled after inspection."

4. Two independent legal errors keep Petitioner in a cell. First, the revocation of an established, Government-conferred liberty without notice, without a written determination, and without any neutral pre-deprivation process violates the Due Process Clause of the Fifth Amendment. Second, to the extent Respondents treat Petitioner as subject to mandatory detention under 8 U.S.C. § 1225, that designation is foreclosed in this Circuit. Three weeks ago the Ninth Circuit held, in a published opinion, that 8 U.S.C. § 1225(b)(2)(A) reaches noncitizens seeking entry at the border and not those apprehended in the interior, who are detained under 8 U.S.C. § 1226. Rodriguez Vazquez v. Bostock, No. 25-6842 (9th Cir. July 30, 2026). Petitioner was arrested in Los Angeles County, not at a border.

5. Petitioner therefore brings this Verified Petition under 28 U.S.C. § 2241 and pleads three claims: (1) her re-detention and continued confinement without notice, an individualized determination, or a pre-deprivation hearing violate the Fifth Amendment's guarantee of procedural due process; (2) her detention is governed by INA § 236(a), 8 U.S.C. § 1226(a), and any designation of Petitioner as subject to mandatory detention under 8 U.S.C. § 1225 is contrary to the Immigration and Nationality Act; and (3) Respondents' application of Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), to Petitioner is agency action contrary to law and in excess of statutory authority under 5 U.S.C. § 706(2), owed no deference after Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024).

6. As of the date of this Petition, Petitioner has been detained for at least thirty-three (33) days. Petitioner was arrested on July 20, 2026, when she appeared for a regularly scheduled check-in appointment with U.S. Immigration and Customs Enforcement. The Notice to Appear that DHS served on her the same day already lists her address as the Adelanto ICE Processing Center. Each additional day of confinement is a fresh injury, and counsel will update the running count as this matter proceeds.

7. Petitioner asks this Court to issue an order to show cause returnable within three days under 28 U.S.C. § 2243, to grant the writ, and to order her immediate and

unconditional release. She does not seek a bond hearing and does not seek release on bond; the remedy for confinement imposed without lawful authority is release, not a hearing at which the Executive may attempt to supply the authority it lacked. No relief is sought as to the removal charges themselves, the merits of her asylum claim, or any order of removal; this Petition challenges the lawfulness of her custody alone.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 2241(a) and (c)(3), which authorize a federal court to grant the writ of habeas corpus to a person held in custody in violation of the Constitution or laws of the United States, and under 28 U.S.C. § 1331. The Ninth Circuit has confirmed that district courts retain habeas jurisdiction over challenges to the statutory and constitutional basis of immigration detention. Hernandez v. Sessions, 872 F.3d 976, 987-88 (9th Cir. 2017).

9. Nothing in 8 U.S.C. § 1226(e) or 8 U.S.C. § 1252 strips that jurisdiction. Petitioner does not ask this Court to review a discretionary judgment about the amount of bond or a determination committed to agency discretion, and she does not challenge any order of removal. She challenges the legality of her custody — the classic office of the writ.

10. Venue is proper in this District under 28 U.S.C. § 2241(d) because Petitioner is physically detained within the Central District of California, at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301, and because her immediate custodian is located in this District. Assignment to the Eastern Division is proper because Adelanto lies in San Bernardino County.

## III. PARTIES

11. Petitioner LESBIA MERCEDES GONZALEZ VELASQUEZ is a citizen and national of Nicaragua, born in 1974 in Managua. She has resided continuously in the United States since November 29, 2022. She is currently detained at the Adelanto ICE Processing Center in Adelanto, California, and is unable to verify this Petition personally; counsel therefore verifies it on her behalf under 28 U.S.C. § 2242.

12. Respondent FERETI SEMAIA is the Warden of the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, California 92301. He has immediate physical custody of Petitioner and is sued in his official capacity. Warden Semaia is employed by The GEO Group, Inc., a private contractor, and on information and belief is served and represented separately from the federal Respondents.

13. Respondent JAIME RIOS is the Field Office Director of the Los Angeles Field Office of Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement. He exercises custodial authority over noncitizens detained at Adelanto by that Field Office and is sued in his official capacity.

14. Respondent DAVID VENTURELLA is the Acting Director of U.S. Immigration and Customs Enforcement, 500 12th Street SW, Washington, DC 20536. He is sued in his official capacity.

15. Respondent MARKWAYNE MULLIN is the Secretary of the U.S. Department of Homeland Security, 2707 Martin Luther King Jr. Avenue SE, Washington, DC 20528. He is responsible for the administration and enforcement of the immigration laws and is sued in his official capacity.

16. Respondent TODD BLANCHE is the Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530. He was confirmed by the United States Senate on August 8, 2026 and is sued in his official capacity. He is responsible for the Executive Office for Immigration Review, including the Adelanto Immigration Court.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES IS NOT REQUIRED AND WOULD BE FUTILE

17. Section 2241 contains no statutory exhaustion requirement. Exhaustion in immigration habeas "can be either statutorily required or judicially imposed as a matter of prudence," and where the requirement is prudential, courts have discretion to waive it. Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007). Waiver is appropriate where administrative remedies are inadequate, where irreparable injury may occur without immediate judicial relief, or where exhaustion would be futile. Laing v. Ashcroft, 370 F.3d 994, 1000-01 (9th Cir. 2004); accord Hernandez v. Sessions, 872 F.3d at 988. Each of those conditions is satisfied here.

18. First, and dispositively, the central claim in this Petition is one no immigration judge has authority to decide. Petitioner's principal contention is that DHS revoked an established period of Government-conferred liberty without notice, without a written determination, and without any pre-deprivation opportunity to be heard. An immigration judge conducting a custody redetermination does not adjudicate whether the Executive violated the Due Process Clause in the manner it re-arrested a person; the immigration court has no jurisdiction to grant that relief. An administrative remedy that cannot reach the violation is not an adequate remedy.

19. Second, the custody question itself is foreclosed at the agency level. The Board of Immigration Appeals held in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), that immigration judges lack authority to consider release for noncitizens the agency treats as applicants for admission. On February 18, 2026 the district court in Maldonado Bautista v. Santacruz, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.), vacated that decision under the Administrative Procedure Act; on March 31, 2026 the Ninth Circuit stayed that vacatur pending appeal. Matter of Yajure Hurtado therefore remains operative as agency precedent, and on January 13, 2026 the Chief Immigration Judge instructed

immigration judges nationwide to continue applying it. Asking the agency to disregard its own controlling precedent is the definition of futility. See Cerro Huerta v. Bondi, No. 1:25-cv-00941-JLT-HBK (E.D. Cal. Jan. 9, 2026) (waiving prudential exhaustion where the Board is bound by Matter of Yajure Hurtado).

20. Third, an appeal to the Board could not provide timely relief. Each additional day of unlawful confinement is a separate and irreparable constitutional injury that no later administrative order can undo.

## V. FACTUAL BACKGROUND

### A. DHS Inspected Petitioner and Released Her on Parole in November 2022.

21. Petitioner was born in 1974 in Managua, Nicaragua. She is an agricultural engineer by training and is single with no children. She holds a valid passport issued by the Republic of Nicaragua on June 29, 2022 and expiring June 29, 2032; the passport number is redacted from this public filing pursuant to C.D. Cal. Local Rule 5.2-1. (Ex. A.)

22. Petitioner left Nicaragua on November 12, 2022, after years of political persecution connected to her participation in the civic protests that began on April 18, 2018, including a written threat delivered to her by name. (Ex. B.) She arrived in the El Paso, Texas area on November 29, 2022, and was encountered by U.S. Border Patrol. (Ex. C.)

23. DHS processed Petitioner, recorded her biographic information, took her fingerprints, and inventoried her personal property (Ex. D), and issued her a Form I-94 Arrival-Departure Record. That form bears a Department of Homeland Security stamp reading “PAROLED,” and “Purpose: 212(d)(5),” dated 11-30-22 and signed by the processing officer at El Paso. (Ex. E.) DHS then released Petitioner into the interior of the United States. It set no bond, made no finding of dangerousness, and made no finding that she posed a risk of flight. (Ex. C.)

24. That decision is the beginning of the liberty interest at issue in this case. It was the Government's own decision, memorialized on the Government's own form.

**B. Petitioner Lived Openly and Lawfully for Three Years and Eight Months.**

25. Petitioner traveled to Los Angeles County and established her home there, first in Los Angeles and later in Huntington Park. She has lived in this District's vicinity continuously since her release.

26. On November 27, 2024, Petitioner filed a complete Form I-589, Application for Asylum and for Withholding of Removal, including protection under the Convention Against Torture. USCIS acknowledged receipt on December 17, 2024 and confirmed that the application was pending. (Ex. F; Ex. G.) That application remains pending; it has never been denied, withdrawn, or found frivolous.

27. On June 18, 2025, Petitioner applied for employment authorization based on her pending asylum application. USCIS granted the application and issued her an Employment Authorization Document, category C08, valid from June 26, 2025 through June 25, 2030. (Ex. H.) The United States Government thus certified in writing that Petitioner was authorized to work in this country for five years — a period that has not yet expired.

28. On August 12, 2025, Petitioner applied for and was issued a Social Security card. (Ex. I.) She kept her address current with USCIS as required, and she received agency correspondence at each address she reported.

29. Petitioner has never been arrested, charged, or convicted of any offense in the United States or anywhere else. (Ex. G, Part C.6.) She is not subject to mandatory detention under 8 U.S.C. § 1226(c), and Respondents have never contended otherwise.

**C. Petitioner Was Arrested at an Appointment the Government Directed Her to Attend.**

30. On July 20, 2026, Petitioner appeared at a regularly scheduled check-in appointment with U.S. Immigration and Customs Enforcement, as she had been instructed to do. She went voluntarily. She was taken into physical custody at that appointment.

31. Petitioner was not told in advance that her release would be revoked. She was not served with any written determination explaining why the Government's 2022 decision to release her no longer held. She was not given an opportunity to present evidence of her compliance, her employment authorization, her pending asylum application, or her ties to the community. She was not brought before any neutral decisionmaker before she was jailed.

32. ICE took custody of Petitioner's personal property and identity documents at the time of arrest, including her passport, her original Employment Authorization Document, her Social Security card, the immigration papers documenting her 2022 parole, her cellular telephone, her bank cards, her insurance card, and her income tax records. Petitioner requests the return of each of those items as part of the relief sought below.

**D. DHS Placed Petitioner in Expedited Removal, Then Vacated Its Own Order.**

33. After the arrest, DHS placed Petitioner into expedited removal proceedings and issued an order of removal under section 235(b)(1) of the Act. Congress limited that summary procedure to noncitizens who have not affirmatively shown continuous physical presence in the United States for the two-year period preceding the determination of inadmissibility. INA § 235(b)(1)(A)(iii)(II), 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Petitioner had been continuously present for nearly four years, a fact documented by the Government's own records: her November 2022 parole, her 2024 USCIS receipt notice,

her 2025 Employment Authorization Document, and her 2025 Social Security card. (Exs. E, F, H, I.)

34. An asylum officer then found that Petitioner has a credible fear of persecution or torture. DHS vacated its expedited removal order. Both facts appear on the face of the Notice to Appear, which states that the notice "is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture" and that the "Section 235(b)(1) order was vacated pursuant to: 8CFR 208.30 8CFR 235.3(b)(5)(iv)." (Ex. J.)

35. On July 20, 2026, DHS served Petitioner with a Notice to Appear, Form I-862 (Event No. LOS2607001266), placing her in removal proceedings under section 240 of the Act and charging her with inadmissibility under INA § 212(a)(6)(A)(i) and § 212(a)(7)(A)(i)(I). The Notice to Appear lists her address as 10400 Rancho Road, Adelanto, California, and sets a hearing before the Adelanto Immigration Court for July 31, 2026. (Ex. J.)

36. Allegation 4 of that Notice to Appear states that Petitioner "was not then admitted or paroled after inspection by an Immigration Officer." That allegation cannot be reconciled with the Government's own Form I-94, which records that DHS paroled Petitioner into the United States under INA § 212(d)(5) on November 30, 2022. (Compare Ex. J with Ex. E.) Petitioner does not litigate the removal charges here. She notes the contradiction for a narrower purpose: the Government has never made a consistent, documented determination of what statute authorizes her detention, which is precisely why no lawful custody determination has ever occurred.

**E. Petitioner's Detention and Custody Proceedings.**

37. Petitioner has been held at the Adelanto ICE Processing Center at all times since her arrest. She has never received an individualized custody determination in which a neutral decisionmaker weighed flight risk and danger on the facts of her case. [

38. Respondents have not identified any changed circumstance between November 30, 2022, when DHS released Petitioner, and July 2026, when DHS jailed her. Petitioner acquired no criminal record in the interim. She acquired an asylum application, work authorization, a Social Security number, and a documented address history — all of which make her more locatable and more invested in appearing, not less.

## VI. LEGAL FRAMEWORK

**A. Section 1226(a), Not Section 1225, Governs the Detention of a Person Arrested in the Interior of the United States.**

39. The Immigration and Nationality Act divides pre-order detention between two regimes. Section 236(a), 8 U.S.C. § 1226(a), authorizes the arrest and detention of a noncitizen pending a decision on removal and expressly permits release on bond or conditional parole; its implementing regulations provide for an initial custody determination by an immigration officer and a custody redetermination before an immigration judge. 8 C.F.R. § 236.1(c)(8), (d)(1); 8 C.F.R. § 1003.19. Those provisions are described here to identify the outer limit of the Executive's detention authority, not because Petitioner seeks a hearing under them. Section 235(b), 8 U.S.C. § 1225(b), governs inspection at the border and the treatment of those seeking entry.

40. The Supreme Court described that division in Jennings v. Rodriguez, 583 U.S. 281, 287-88 (2018), explaining that Section 1225(b) applies to noncitizens at the Nation's borders and ports of entry while Section 1226(a) applies to those apprehended inside the United States. For nearly three decades, and across administrations of both parties, the Executive applied the statutes that way.

41. The Ninth Circuit has now held as much, in a published decision issued three weeks before this filing. In Rodriguez Vazquez v. Bostock, No. 25-6842 (9th Cir. July 30, 2026), the court affirmed a district court judgment and held that noncitizens

present without admission who are apprehended in the interior of the United States are subject to the detention regime of Section 1226, not Section 1225(b)(2)(A). The court reasoned that Section 1225(b)(2)(A) requires both that a person be an “applicant for admission” and that the person be “seeking admission,” and that the latter phrase describes a person presently seeking lawful entry at the border — not a long-resident noncitizen who is resisting removal and seeking asylum from within the country. That holding is binding on this Court.

42. Petitioner's case is stronger than the ordinary interior-arrest case in two respects. She was not merely apprehended in the interior; the Government inspected her at the border in 2022, exercised its discretion to parole her under INA § 212(d)(5), and released her. And she is not seeking admission in any sense: she is seeking asylum and withholding of removal, forms of relief that are not admission.

43. Within this District, the same conclusion was reached in Maldonado Bautista v. Santacruz, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Dec. 18, 2025), which entered declaratory judgment that the persons before it are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), and which vacated the July 8, 2025 DHS “Interim Guidance Regarding Detention Authority for Applicants for Admission” under the Administrative Procedure Act. The Ninth Circuit stayed that judgment only insofar as it extends beyond the Central District of California; it “remains in place as to the Central District of California.” Petitioner is detained in this District. Petitioner does not plead membership in the certified class and does not rely on class relief; she cites Maldonado Bautista as persuasive authority from this District and relies on Rodriguez Vazquez as binding circuit law.

**B. Matter of Yajure Hurtado Is Contrary to Law and Owed No Deference.**

44. Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), adopted the position that noncitizens present without admission are categorically ineligible for a

custody redetermination because they are subject to Section 1225(b)(2). That is the same interpretation the Ninth Circuit rejected in Rodriguez Vazquez and that this District rejected in Maldonado Bautista.

45. After Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), a court does not defer to an agency's construction of a statute; it exercises independent judgment about what the statute means. The Board's reading cannot survive that independent judgment, and Respondents may not rely on it to justify Petitioner's confinement.

**C. Expedited Removal Could Not Lawfully Reach Petitioner.**

46. Expedited removal under INA § 235(b)(1) is available only against a noncitizen who has not affirmatively shown continuous physical presence in the United States for the two years preceding the determination of inadmissibility. 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Petitioner had been present for nearly four years and could prove it with the Government's own documents. Respondents cannot derive mandatory detention authority from a summary track that did not lawfully apply to her, that produced an order the Government itself vacated, and that has been replaced by ordinary removal proceedings under section 240.

**D. Civil Detention Requires Process and a Legitimate Purpose.**

47. The Due Process Clause of the Fifth Amendment protects every person within the United States, without regard to immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Freedom from physical restraint by the Government lies at the heart of the liberty the Clause protects, and civil detention must bear a reasonable relation to a legitimate, non-punitive governmental purpose. Id. at 690.

48. Where the Government seeks to deprive a person of a protected liberty interest, the process due is measured by the private interest affected, the risk of erroneous

deprivation under the procedures used and the value of additional safeguards, and the Government's interest. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). In the immigration detention context, the Ninth Circuit has recognized that the liberty interest at stake is substantial and that the Government bears the burden of justifying continued confinement by clear and convincing evidence. Singh v. Holder, 638 F.3d 1196, 1203-04 (9th Cir. 2011).

## VII. CLAIMS FOR RELIEF

### COUNT ONE — Fifth Amendment, Procedural Due Process: Revocation of an Established Liberty Without Notice, Determination, or Hearing

49. Petitioner realleges each preceding paragraph.

50. DHS conferred on Petitioner a defined status of conditional liberty when it paroled her into the United States on November 30, 2022 and released her from custody. She held and exercised that liberty for three years and eight months. During that period the United States itself issued her an Employment Authorization Document valid through 2030 and accepted and docketed her asylum application. That is a protected liberty interest, and its value under the first Mathews factor is established by how she used it: a home, lawful work authorization, a Social Security number, a pending asylum claim she actively prosecuted, and compliance with every instruction the Government gave her — including the instruction to appear at the very appointment at which she was seized.

51. The procedures used to strip that liberty were, so far as this record shows, no procedures at all. Petitioner received no advance notice, no written determination explaining the basis for revoking her release, no individualized finding that she had become a flight risk or a danger, no opportunity to submit evidence, and no hearing before a neutral decisionmaker at any point before she was incarcerated. Under the second Mathews factor, the risk of erroneous deprivation in that posture is not merely

high; it is total. There was no mechanism capable of catching an error, and the operative charging document in fact contains an allegation that the Government's own parole record refutes.

52. Under the third Mathews factor, the Government's legitimate interests are appearance at proceedings and enforcement of the immigration laws. Those interests do not explain this detention. DHS itself concluded in 2022 that community release adequately served them, and nothing in the record identifies what changed. The additional safeguards Petitioner was denied — notice, a statement of reasons, and an opportunity to be heard before incarceration — are neither costly nor unusual; they are the ordinary incidents of a custody determination under 8 C.F.R. § 236.1 and § 1003.19.

53. Petitioner's continued detention, and the manner in which it was imposed, therefore violate the Due Process Clause of the Fifth Amendment. Because the violation consists of confinement imposed without process, the remedy that cures it is release.

**COUNT TWO — Detention Contrary to INA § 236(a), 8 U.S.C. § 1226(a)**

54. Petitioner realleges each preceding paragraph.

55. Petitioner was arrested in the interior of the United States, in Los Angeles County, after more than three years of residence. No provision of the Immigration and Nationality Act made her detention mandatory. Whatever authority Respondents possessed arose, if at all, under INA § 236(a), 8 U.S.C. § 1226(a), which is wholly discretionary and which conditions any exercise of that discretion on an individualized determination that the Executive never made. Petitioner cites § 1226(a) to establish the limits of Respondents' authority, not to request relief under it.

56. To the extent Respondents detain Petitioner under 8 U.S.C. § 1225 — whether as a purported "applicant for admission" under § 1225(b)(2)(A) or on the theory that a vacated expedited removal order leaves her within § 1225(b)(1)(B)(ii) — that detention is contrary to the Immigration and Nationality Act. Section 1225(b)(2)(A) does

not reach interior arrests. Rodriguez Vazquez v. Bostock, No. 25-6842 (9th Cir. July 30, 2026); see Jennings, 583 U.S. at 287-88; Maldonado Bautista, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Dec. 18, 2025). And the expedited removal order that might otherwise have triggered § 1225(b)(1) was vacated by DHS itself; Petitioner is now a respondent in ordinary removal proceedings under section 240, on an NTA that DHS served on July 20, 2026.

57. Respondents never made the individualized determination on which any lawful exercise of § 1226(a) discretion depends. The consequence is not that Petitioner is owed a hearing at which the Executive may attempt, months after the fact, to supply the justification it never had. The consequence is that her confinement has been unlawful from the moment it began and remains unlawful today, for at least thirty-three days and counting. Detention imposed without lawful authority is remedied by release, not by a belated opportunity to justify it.

**COUNT THREE — Administrative Procedure Act, 5 U.S.C. § 706(2)**

58. Petitioner realleges each preceding paragraph.

59. Respondents' determination to detain Petitioner without any individualized custody determination, resting on the legal position adopted in Matter of Yajure Hurtado and on DHS's now-vacated interim guidance, is final agency action that is arbitrary and capricious, contrary to law, and in excess of statutory authority. 5 U.S.C. § 706(2)(A), (C). The agency's statutory interpretation receives no deference. Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024). Petitioner seeks no injunction against the operation of the immigration statutes; she seeks individual relief from unlawful custody.

## VIII. RELEASE BY THIS COURT IS THE ONLY ADEQUATE REMEDY

60. A remand for a custody hearing before the Adelanto Immigration Court would not remedy the violations alleged here, for two independent reasons.

61. First, the immigration court cannot adjudicate the constitutional claim. Petitioner's principal claim is that the Executive revoked an established period of liberty without notice, without a written determination, and without any pre-deprivation process. An immigration judge conducting a custody redetermination decides whether a noncitizen should be released going forward; the immigration court has no authority to decide whether DHS violated the Due Process Clause, and no authority to grant a remedy for that violation.

62. Second, the custody question is presently foreclosed in that forum as a matter of agency precedent. The immigration judges sitting at the Adelanto Immigration Court are instructed to apply Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), which holds that noncitizens the agency treats as applicants for admission are ineligible for a custody redetermination. The order vacating that decision in Maldonado Bautista has been stayed by the Ninth Circuit pending appeal, and on January 13, 2026 the Chief Immigration Judge issued nationwide guidance directing immigration judges that Matter of Yajure Hurtado remains binding. In that forum, the outcome of a custody request is preordained. A remand would be a hollow formality that prolongs, rather than remedies, the constitutional violation.

63. The writ of habeas corpus exists for exactly this situation. Where confinement was imposed without constitutionally adequate process and the administrative forum can neither reach the violation nor grant relief, the only adequate remedy is the writ itself: immediate release.

64. Petitioner states expressly, and for the avoidance of any doubt, that she does not request a bond hearing, does not request a custody redetermination, does not consent

to a remand to the immigration court for either purpose, and does not seek release conditioned upon the posting of any bond or the imposition of any conditions of supervision. Her position is not that she is being detained without a hearing to which she is entitled; it is that her seizure and confinement were unlawful when they occurred and have remained unlawful every day since. A bond hearing presupposes a lawful custody that may be continued or relaxed in the Executive's discretion. There is no such lawful custody here. Nothing in this Petition, and no relief the Court may grant, should be construed as a concession that Petitioner's arrest or detention was at any point authorized by law.

## IX. DECLARATORY RELIEF

65. An actual and justiciable controversy exists between Petitioner and Respondents concerning the lawfulness of her detention. Under the Declaratory Judgment Act, 28 U.S.C. § 2201 and § 2202, Petitioner requests a declaration that her detention violates the Due Process Clause of the Fifth Amendment and INA § 236(a), 8 U.S.C. § 1226(a), and that she may not be re-detained on the same record without the process the Constitution requires. Declaratory relief directed to Petitioner's individual custody is available and is not barred by 8 U.S.C. § 1252(f)(1).

## X. PRAYER FOR RELIEF

66. WHEREFORE, Petitioner respectfully requests that this Court:

a. ISSUE an Order to Show Cause, returnable within three (3) days pursuant to 28 U.S.C. § 2243, directing Respondents to show cause why the writ should not be granted;

b. GRANT the Writ of Habeas Corpus and ORDER Respondents to release Petitioner from custody immediately and unconditionally, without requiring the posting of any bond and without conditions of supervision;

c. DECLARE that Petitioner's detention violates the Due Process Clause of the Fifth Amendment and INA § 236(a), 8 U.S.C. § 1226(a), and that Respondents may not re-detain Petitioner on this record absent constitutionally adequate process;

d. ORDER Respondents to return to Petitioner, upon release, all documents and personal property taken from her at the time of her arrest, including without limitation her Nicaraguan passport, her Employment Authorization Document, her Social Security card, the immigration papers documenting her 2022 parole, her cellular telephone, her bank cards, her insurance card, her income tax records, and her personal effects;

e. ORDER Respondents not to transfer Petitioner outside the Central District of California during the pendency of this action without prior leave of Court;

f. ORDER Respondents to file a status report confirming Petitioner's release and the return of her property within twenty-four (24) hours of release;

g. AWARD Petitioner her reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, to be requested by a properly filed separate motion; and

h. GRANT such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: August 21, 2026

Christopher J. DeSalva

CHRISTOPHER JOSEPH DESALVA
LAW OFFICE OF CHRISTOPHER JOSEPH DESALVA
Attorney for Petitioner
LESBIA MERCEDES GONZALEZ VELASQUEZ

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I, CHRISTOPHER JOSEPH DESALVA, declare as follows:

1. I am an attorney licensed to practice law in the State of California (SBN 172209) and am counsel of record for Petitioner Lesbia Mercedes Gonzalez Velasquez in this action.

2. Petitioner is presently detained by U.S. Immigration and Customs Enforcement at the Adelanto ICE Processing Center in Adelanto, California, and is therefore unable to sign and verify this Petition personally.

3. Pursuant to 28 U.S.C. § 2242, which permits a petition for a writ of habeas corpus to be signed and verified by someone acting on the detained person's behalf, I verify this Petition on Petitioner's behalf.

4. I have reviewed Petitioner's immigration records and the exhibits filed with this Petition, and I have obtained information from Petitioner and from her family. Based on that review and information, the factual allegations of this Petition are true and correct to the best of my knowledge, information, and belief. Allegations expressly identified in brackets as requiring verification are pleaded on information and belief pending receipt of records requested from Respondents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 21, 2026, at Indio, California.

Christopher J. DeSalva

CHRISTOPHER JOSEPH DESALVA
Attorney for Petitioner

## CERTIFICATE OF SERVICE

I, DR. VICTOR M. VIRUENA, declare as follows:

1. I am over the age of eighteen years and am not a party to this action. I am employed in Palm Desert, California, and I act on behalf of Christopher J. DeSalva, Esq., counsel for Petitioner.

2. On the date set forth below, I caused the foregoing VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; REQUEST FOR ORDER TO SHOW CAUSE WITHIN THREE (3) DAYS; DECLARATORY RELIEF, together with the exhibits filed herewith, to be filed electronically with the Clerk of the United States District Court for the Central District of California using the Court's CM/ECF system.

3. The CM/ECF system sends notification of such filing to all Respondents and to all counsel of record, including the United States Attorney's Office for the Central District of California as counsel for the named federal Respondents. Service is complete upon electronic filing pursuant to Federal Rule of Civil Procedure 5(b)(2)(E) and Central District of California Local Rule 5-3.2.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 22, 2026, at Palm Desert, California.

Dr. Victor Viruena

DR. VICTOR M. VIRUENA
On behalf of Christopher J. DeSalva, Esq.

**INDEX OF EXHIBITS**

Exhibits are lettered in the order of their first citation in the Petition.

| Ex. | Description | Date | Cited in Petition |
|---|---|---|---|
| A | Republic of Nicaragua Passport (biographic page) — number redacted per L.R. 5.2-1 | Issued 06/29/2022 | ¶ 21 |
| B | Declaration of Petitioner (handwritten, Spanish) with certified English translation | November 2024 | ¶ 22 |
| C | DHS biographic/processing record (CONTROL) and Form I-385, Alien Booking Record | 11/29-30/2022 | ¶ 22, ¶ 23 |
| D | U.S. Customs and Border Protection Baggage Check / property record No. 14470989 | 11/30/2022 | ¶ 23 |
| E | Form I-94, Arrival-Departure Record, bearing DHS stamp "PAROLED — Purpose: 212(d)(5) — Until: 01-30-2023" | 11/30/2022 | ¶ 23, ¶ 33, ¶ 36 |
| F | USCIS Form I-797C, Notice of Action — receipt of Form I-589 (Rcpt. LGL2590040803) | 12/17/2024 | ¶ 26, ¶ 33 |
| G | Form I-589, Application for Asylum and for Withholding of Removal (12 pp.) | Received 11/27/2024 | ¶ 26, ¶ 29 |
| H | USCIS Form I-797C (Form I-765) and Employment Authorization Document, Cat. C08, valid 06/26/2025–06/25/2030 | 06/26/2025 | ¶ 27, ¶ 33 |
| I | Social Security Administration receipt letter and Social Security card stub | 08/12/2025 | ¶ 28, ¶ 33 |
| J | Notice to Appear, Form I-862 (Event No. LOS2607001266), with Continuation Page | 07/20/2026 | ¶ 34, ¶ 35, ¶ 36 |
| K | [RESERVED] Form I-286, Notice of Custody Determination — DOCUMENT NOT YET AVAILABLE; requested from Respondents | July 2026 | -- |

| Ex. | Description | Date | Cited in Petition |
|---|---|---|---|
| L | [RESERVED] Form I-200 administrative warrant, appointment notice, and property receipt from the July 2026 arrest — DOCUMENT NOT YET AVAILABLE | July 2026 | -- |

Note: originals of Exhibits H and I, and of the passport at Exhibit A, are believed to have been taken from Petitioner by U.S. Immigration and Customs Enforcement at the time of her arrest and have not been returned; copies are submitted. Exhibits K and L are reserved and will be lodged upon receipt.

Christopher J. DeSalva

CHRISTOPHER JOSEPH DESALVA
Attorney for Petitioner